**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 23 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.

JOHN THOMAS MORRIS,

    Defendant-Appellee.

No. 03-2029
(D. New Mexico)
(D. Ct. No. CR-00-1341 MV)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

John Thomas Morris pled guilty to three counts of falsifying hazardous

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

waste manifests in violation of the Resource and Recovery Act, 42 U.S.C. § 6928(d)(3). On appeal, we review the district court's failure to apply a four-level enhancement to Morris's offense level pursuant to United States Sentencing Guideline (USSG) § 2Q1.2(b)(4). Our jurisdiction arises under 18 U.S.C. § 3742(b)(2). We reverse and remand for resentencing.

## Background

General Waste Corporation (GWC) is a New Mexico solid waste management business licensed to remove hazardous waste from generating facilities and transport it to final disposal facilities. A hazardous waste transporter must obtain a permit to store such waste for more than ten days. 40 C.F.R. §§ 262.30 and 270.1(c)(2)(vi).

On October 4, 2000, a federal grand jury indicted Morris, along with Emmanuel M. Ohiri, GWC's chief executive officer, and the GWC corporate entity, on twenty-five counts of various environmental violations, including knowingly making false statements on manifests, the illegal transportation of hazardous waste, the illegal storage of hazardous waste, and conspiracy to commit these violations. On March 20, 2001, Morris pled guilty to three counts of knowingly making false material statements and representations on manifests used for the purpose of compliance with the Resources and Conservation Recovery Act, 42 U.S.C. § 6928(d)(3). The plea included Morris's agreement that "he

[would] not seek a downward departure from the applicable sentencing guideline range as determined by the Court after resolution of any objections by either party to the presentence report . . . ." In exchange, the government dismissed the remainder of the charges and agreed to forego bringing additional charges.

The probation officer's initial presentence report recommended, *inter alia*, the court apply USSG § 2Q1.2(b)(4), which provides a four-level enhancement for an offense involving the "transportation, treatment, storage or disposal [of hazardous waste] without a permit or in violation of a permit." The report justified the recommendation by noting Morris's relevant conduct "involved picking up hazardous waste . . . , storing that waste illegally, then falsifying the manifests for those wastes."[1] The report also included Morris's written statement in which he admits to creating false manifests and forging signatures on those manifests to disguise the storage of hazardous waste for an "extended amount of time" without the necessary permits.[2]

---

[1]In supplements to the presentence report, the probation officer continued to maintain that the four-level enhancement under § 2Q1.2(b)(4) was appropriate due to Morris's relevant conduct. *See* § 1B1.3(a)(1)(A).

[2]Morris stated:

> I was employed at General Waste Corporation (GWC) from July of 1997 to July of 1998. My title was Operations Manager. My responsibilities entailed over sight of the Hazardous Waste activities, Construction Debris disposal, and Sales.

\* \* \* \* \*

Morris filed various objections to the report, including an objection to the proposed four-level enhancement. Primarily, he claimed § 2Q1.2(b)(4)'s enhancement only applies to substantive offenses rather than his offense of conviction — a "simple recordkeeping offense."[3]

> Once the waste in the warehouse was organized, I started to make sales contacts with hazardous waste accounts I had managed prior to my employment with GWC. My previous employer . . . had an authorization granted by the State of New Mexico to store Hazardous waste . . . up to 180 days [after it was] received . . . [as a] conditionally exempt small quantity waste generator (CESQG). Without this type of authorization, a waste management transporter could only store the waste for no more than 10 days. I personally made the decision, on my own accord, to operate GWC as if we were authorized as [a] 180 day storage and accumulation facility. I created uniform hazardous waste shipping manifests for GWC as the receiving facility. I then re-manifested the waste containers and had GWC designated as a generator for outbound waste disposal. I intentionally did this for building or aggregating larger out bound shipments of [*sic*] economical reasons. Manny Ohiri was not informed of my waste management strategy and techniques in this particular case.

> * * * * *

> In order to maintain my waste management accounts and integrity, I would change dates on various small quantity generator (SQG) manifests due to the waste facility non-approval status. I would pick up waste without obtaining disposal facility prior approval and would hold the waste over an extended amount of time until the approval was in place. I had recreated waste manifests and forged signatures to be in compliance and to elude the waste generator and the disposal facility. Manny Ohiri was not informed of this activity.

[3] "'Simple recordkeeping or reporting violation' means a recordkeeping or reporting offense in a situation where the defendant neither knew nor had reason to believe that the recordkeeping offense would significantly increase the likelihood of any substantive environmental harm." USSG § 2Q1.2, comment. (n.

The government countered that Morris committed his recordkeeping offense for the purpose of concealing a substantive offense, and therefore his relevant conduct placed the offense within § 2Q1.2(b)(5), requiring the application of the (b)(4) enhancement. To support its argument, the government offered copies of the falsified manifests. It also presented a letter written by Ohiri, Morris's supervisor, to a customer at a generating facility. The letter responded to the customer's complaints of discrepancies between a manifest received from Morris and the copy from the final disposal facility.

One of the transactions in question, detailed by three manifests, proves illustrative. The first manifest notes a November 24 pickup date of hazardous waste along with the true signature of the generating customer. The second manifest notes the same pickup date but with delivery to the final disposal facility dated ten days later (December 5), along with a forged disposal facility signature. And while the third manifest involves the same transaction, the pickup date has been changed to January 12, and the delivery date changed to January 21, along with a forged signature of the generating customer. Ohiri explained in his letter that the discrepancies between the dates on the manifests were due to Morris's failure to

_____

2); *see also* Ch.1, Pt.A4(f), intro. comment. ("[T]he Commission has developed a system for treating technical recordkeeping and reporting offenses that divides them into four categories. First, in the simplest of cases, the offender may have failed to fill out a form intentionally, but without knowledge or intent that substantive harm would likely follow.")

obtain timely approval for transport to an appropriate waste facility: "Mr. Morris recreated the manifests to meet the 10 day EPA limitation for [the] GWC facility."

Rejecting the government's analysis of this evidence, Morris argued that retention of the waste without a permit "was not relevant conduct as to the offense of conviction" warranting an enhanced sentence. He further argued that even if the enhancement was germane, application note 8 to § 2Q1.3 requires the court to weigh the nature and quality of the hazardous substance involved and the risk associated with the offender's conduct before applying the enhancement.[4] Morris concluded that the evidence, at best, warranted only a two-level enhancement.

Apparently accepting the need to weigh such evidence, the district judge questioned Morris as to the nature of the waste detailed in the manifests and determined "the Court [had] not received sufficient evidence, either in the presentence report or in the presentation of evidence [at the hearing], to permit the Court to make the findings that are required."[5] She further stated she did not have

---

[4] Application note 8 actually discusses the possibility of a departure (not an enhancement) of up to two levels (up or down), should the facts warrant.

[5]The district court referred to an unpublished decision, *United States v. Hart*, 61 F.3d 917, 1995 WL 445685 (10th Cir. Jul. 28, 1995) (table decision), *cert. denied*, 516 U.S. 1062 (1996), which discussed the findings necessary to apply relevant conduct under USSG § 1B.1.3(a)(2). We determine this case solely on the basis of USSG §1B.1.3(a)(1). "[I]f a defendant's accountability is established under one provision of this guideline [§ 1B.1.3], it is not necessary to review alternative provisions under which such accountability might be established." § 1B1.3, comment. note 2(a)(1). Therefore, the holding in *Hart* is not relevant to this case.

sufficient evidence to apply application note 8's two-level "enhancement" and therefore declined to apply any enhancement. She sentenced Morris to three years probation, on the condition that six months be served in some form of custody. This appeal followed.

**Discussion**

We consider whether the district court correctly refused to impose USSG § 2Q1.2(b)(4)'s four-level enhancement. We review de novo the district court's legal interpretation of the Guidelines as well as its conclusion that the evidence is insufficient as a matter of law to warrant the enhancement. *See United States v. Valdez,* 225 F.3d 1137, 1142 (10th Cir. 2000) (citing *United States v. Checora,* 175 F.3d 782, 789 (10th Cir. 1999)), *cert. denied*, 532 U.S. 996 (2001).

At the risk of appearing didactic, we begin our analysis by reviewing the general approach to be used in applying the Guidelines. Once the correct guideline is identified (the parties agree it is § 2Q1.2) and the base level is established (the parties agree it is eight) it is necessary to "apply any appropriate specific offense characteristics, cross references, and special instructions contained in the particular Guideline . . . in the order listed." USSG § 1B.1.1(b) (emphasis added)*; see generally*, USSG §§ 1B.1.1 & 1B.1.2. But those factors are all determined by reference to what has become known as the offender's "relevant conduct," not merely the offense of conviction. USSG § 1B1.3. Consequently, our review first leads us to

consider relevant conduct.

Relevant conduct is a shorthand term for the Guideline's requirement that offense characteristics and adjustments "shall be determined on the basis of . . . all acts and omissions committed, . . . induced, procured, or willfully caused by the defendant . . . <u>that occurred during the commission of the offense of conviction</u>, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . . ." USSG §1B1.3(a) (emphasis added). "[A] plea agreement that includes the dismissal of a charge . . . shall not preclude the conduct underlying such charge from being considered under the provisions of § 1B1.3 (Relevant Conduct) in connection with the count(s) of which the defendant is convicted." USSG § 6B1.2(a).[6] The presentence report identified Morris's relevant conduct to be the illegal storage of hazardous waste without a permit even though a record keeping violation was the offense of conviction.

When the government seeks to use the defendant's relevant conduct to increase his base offense level, "it must show that the relevant conduct occurred by a preponderance of the evidence." *United States v. Sapp*, 53 F.3d 1100, 1104 (10th Cir. 1995) (citation omitted), *cert. denied*, 516 U.S. 1082 (1996). Subsection (b)(4) of §

---

[6] "This paragraph prevents a plea agreement from restricting consideration of conduct that is within the scope of §1B1.3 (Relevant Conduct) in respect to the count(s) of which the defendant is convicted; it does not in any way expand or modify the scope of §1B1.3 (Relevant Conduct)." USSG §6B1.2, comment.

2Q1.2 states that a four-level enhancement is required when "the offense involved transportation, treatment, storage or disposal without a permit or in violation of a permit." Morris's admissions in the presentence report clearly establish his knowledge that the storage of hazardous waste for more than ten days required a permit and GWC did not have the required permit. *See infra*, note 2. Morris also admits that he recreated manifests and forged signatures to avoid detection of the illegal hazardous waste storage at GWC. *Id*. Morris's admissions are corroborated by the manifests showing the alteration of dates and signatures. At no time did Morris object to or contradict this evidence, he merely objected to the enhancement. Thus, the uncontested evidence demonstrates that the probation report is correct; Morris's relevant conduct is described by specific offense characteristic § 2Q1.2(b)(4) because "the offense involved transportation, treatment, storage, or disposal without a permit or in violation of a permit . . .", which demands a four-level enhancement. (Emphasis added.)

In the district court the parties argued at length about the proper application of §§ 2Q1.2(b)(5) and (6). Those arguments continue here, but are unavailing.[7] Because they do not inform the debate we will not address them. When specific offense characteristics are applied sequentially, as the Guidelines require, the exercise is

---

[7] The arguments seem, almost by design, to eschew straightforward analysis of the issue in order to "obscure it in a legal fog." *Zadvydas v. Davis*, 533 U.S. 678, 703 (2001) (Scalia, J., dissenting). A desultory approach, while sometimes successful, is rarely productive and always inefficient.

complete upon reaching § 2Q1.2(b)(4).  That section properly defines the offense for sentencing purposes and it is unnecessary to continue down the list.  Stated differently, since relevant conduct necessarily defines the offense otherwise, it cannot be a record keeping offense (§ 2Q1.2(b)(5)) or a simple record keeping offense (§ 2Q1.2(b)(6)).  Once relevant conduct was established (as stated, the relevant conduct facts are compelling and undisputed, therefore conclusive), additional fact finding was unnecessary, except as it might impact a departure decision.

To that end we consider the departure guidance contained in application note 8, which says:

> Subsection (b)(4) applies where the offense involves violation of a permit, or where there was a failure to obtain a permit when one was required.  Depending upon the nature and the quantity of the substance involved and the risk associated with the offense, <u>a departure</u> of up to two levels, either upward or downward may be warranted.

(Emphasis added.)  Morris suggests application note 8 is actually an adjustment, not a departure, because it changes the offense level.  (R., Appellee Br. at 16.)  He is mistaken.

The distinction between an adjustment and a departure is critical.  *United States v. Smith*, 930 F.2d 1450, 1453 (10th Cir.), *cert. denied*, 502 U.S. 879 (1991).  The district court may consider a departure only after completing the adjustments required in the offense guideline.  Application note 8 necessarily presumes all adjustments have been made when it invites departure consideration.  USSG § 1B.1.1(h) and (i).  Moreover,

Chapter 1, Part A(4)(b) of the Guidelines states:

> It is important to note that <u>the guidelines refer to two different kinds of departure</u>. The first involves instances in which the guidelines provide specific guidance for departure by analogy or by other numerical or non-numerical suggestions. The Commission intends such suggestions as policy guidance for the courts. The Commission expects that most departures will reflect the suggestions and that the courts of appeals may prove more likely to find departures "unreasonable" where they fall outside suggested levels.
>
> A second type of departure will remain unguided. It may rest upon grounds referred to in Chapter Five, Part K (Departures) or on grounds not mentioned in the guidelines.

(Emphasis added.) Application note 8 clearly states a <u>departure</u> may be warranted, the type of <u>departure</u> explicitly described in the introductory comments quoted above. We will not ignore such express direction, nor will we allow Morris to ignore the terms of his plea agreement which preclude argument for a downward departure. On remand, evidence or argument supporting a downward departure is foreclosed.

## Conclusion

The uncontroverted evidence presented at the sentencing hearing established Morris's relevant conduct as the illegal storage of hazardous waste without a permit. The district court is required to apply the four-level enhancement found in USSG §2Q1.2(b)(4). Application Note 8 is not pertinent to Morris's sentencing, as he has waived his right to argue for a downward departure in his plea agreement. This case is

**REVERSED** and **REMANDED** for resentencing in accordance with USSG §

2Q1.2(b)(4).


                                             **Entered by the Court:**


                                             **TERRENCE L. O'BRIEN**
                                             United States Circuit Judge