**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 7, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

EMMANUEL N. OHIRI,

Defendant-Appellant.

No. 03-2239
(D.C. No. CV-03-172-MV/ACT)
(D. N.M.)

---

**ORDER AND JUDGMENT** *

---

Before **BRISCOE** , **ANDERSON** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Emmanuel N. Ohiri, appearing *pro se*, appeals from the district court's denial of his motion to amend his original motion to vacate, set aside, or correct his sentence filed pursuant to 28 U.S.C. § 2255.[1] He also seeks a certificate appealability so he can appeal the court's dismissal of his original motion. Claiming actual innocence, Ohiri seeks collateral relief from his sentence and convictions, which were based on a guilty plea. In his amended motion, he contends the government committed *Brady* violations[2] by failing to disclose exculpatory evidence material to his decision whether to plead guilty. He also contends that he received ineffective assistance of counsel in violation of the Sixth Amendment.

We **reverse** the denial of the motion to amend the § 2255 motion and **remand** for further proceedings. [3]

I.      **Background**

On October 4, 2000, a federal grand jury returned a twenty-five count indictment charging General Waste Corporation ("GWC"), Ohiri, and John Thomas Morris with conspiracy to transport, store, and dispose of hazardous

---

[1]This court granted Ohiri a certificate of appealability on the issue whether the district court abused its discretion when it denied his request to file a *pro se* amended § 2255 motion.

[2]*Brady v. Maryland*, 373 U.S. 83 (1963).

[3]Respondent's Motion to Supplement the Record on Appeal is **granted**.

waste in violation of the Resources and Conservation Recovery Act. *See United States v. Morris*, 85 Fed. App. 117, 119 (10th Cir. 2003). GWC was "a New Mexico solid waste management business licensed to remove hazardous waste from generating facilities and transport it to final disposal facilities." *Id*. at 118. Ohiri was GWC's chief executive officer; Morris served as GWC's hazardous waste and construction debris operations manager from July 1997 to July 1998. *Id*. at 119 & n.2.

Morris pleaded guilty to three counts of knowingly making false statements and representations on manifests. *Id*. at 119. In a written statement made by Morris to the Environmental Protection Agency in 1999 and included in his presentence report, Morris stated:

> The first two weeks that I joined GWC, Manny Ohiri instructed me to identify, segregate, and label miscellaneous hazardous waste containers. Those containers had been accumulated by GWC waste management activities, and stored in GWC warehouse prior to my arrival. . . . I do not know how long the regulated material GWC accumulated had been in storage prior to my employment. My participation included recreating false waste manifests for proper off-site disposal of the waste GWC had accumulated prior to my employment. Manny Ohiri was aware of this activity.

*United States v. Ohiri*, 242 F. Supp.2d 1038, 1041 (D.N.M. 2003). Pursuant to the terms of a plea agreement dated March 4, 2002, Ohiri also pleaded guilty to three counts. Count 21 provided that from February 13, 1998 until May 18, 1999, Ohiri knowingly stored 11,000 pounds of hazardous waste from the Four Corners

-3-

Drilling Company without a permit. Count 23 provided that from July 17, 1998 until October 15, 1998, Ohiri knowingly stored 225 pounds of hazardous waste from Giant Refining Company without a permit. Count 25 provided that from May 28, 1999 until July 27, 2001, Ohiri knowingly stored 183 pounds of hazardous waste obtained from iiná bá, a New Mexico company, and 122 pounds of hazardous waste from TPL, Inc. without a permit. At sentencing, Ohiri argued that an enhancement for his role as an organizer, leader, manager, or supervisor should not be applied because the government had failed to show that Morris "was involved criminally in the particular conduct that is the basis of [Ohiri's] guilty pleas." *Id*. at 1040. In addressing this argument, the district court reviewed and read aloud Morris' Acceptance of Responsibility Statement. This statement was provided to the probation officer for inclusion in Morris' presentence report. *Id.* at 1041. The government concedes that it had never provided this statement to Ohiri or his attorney, John Cline. In the Acceptance of Responsibility Statement, Morris first repeated the statement he made to the EPA in 1999, asserting that Ohiri instructed him to dispose of hazardous waste that had been accumulated and unlawfully stored by GWC prior to his employment. Morris then addressed Ohiri's knowledge of Morris' other illegal activities:

> Once the waste in the warehouse was organized, I started to make sales contacts with hazardous waste accounts I had managed prior to my employment with GWC. My previous employer . . . had an authorization granted by the State of New Mexico to store hazardous

-4-

waste, up to 180 days, received from a conditionally-exempt small-quantity waste generator [CESQG]. Without this type of authorization, a waste management transporter could only store the waste for no more than ten days. I personally made the decision, of my own accord, to operate GWC as if we were authorized as a 180-day storage and accumulation facility. I created uniform hazardous waste shipping manifests for GWC as the receiving facility. I then remanifested the waste containers, and had GWC designated as a generator for out-bound waste disposal. I intentionally did this for building or aggregating larger outbound shipments [for] economical reasons. Manny Ohiri was not informed of my waste management strategy and techniques in this particular case. For economical benefits and to increase profit margins related to the account, I would consolidate partial waste containers, mixing waste from multiple CESQGs, reducing outbound disposal container volume. I did this on my own accord, and Manny Ohiri was not informed of this strategy. In order to maintain my waste management accounts and integrity, I would change dates on various small quantity generator manifests, due to the waste facility non-approval status. I would pick up waste without obtaining disposal facility prior approval, and would hold the waste over an extended amount of time, until the approval was in place. I had recreated waste manifests and forged signatures to be in compliance, and to elude the waste generator and disposal facility. Manny Ohiri was not informed of this activity.

Although it considered Morris' Acceptance of Responsibility Statement, the district court concluded that Ohiri had a supervisory role over Morris in other relevant crimes and imposed a two-level enhancement pursuant to § 3B1.1(c) of the United States Sentencing Guidelines. *Ohiri*, 242 F. Supp.2d at 1041. Ohiri was sentenced to a fifteen-month term of imprisonment, three years of supervised release and, ordered to pay nearly $42,000 in fines and restitution. *See id.* at 1042.

After Ohiri was sentenced, Cline moved to withdraw and Ohiri obtained representation from new counsel, Ray Twohig. Twohig filed a Motion for a New Trial, a New Sentencing, or a Correction of Sentence. The motion was denied. Twohig then filed a perfunctory § 2255 motion alleging only that: (1) Ohiri's guilty plea was involuntary, (2) Ohiri was opposed to proceeding with sentencing, and that (3) Ohiri was not aware of Morris' Acceptance of Responsibility Statement and thus his "involuntary guilty plea remained involuntary." The § 2255 motion was not supported by affidavits, record evidence, or a brief. The magistrate judge did not hold an evidentiary hearing but prepared a Report and Recommendation recommending that the motion be dismissed. The magistrate's recommendation was based, in part, on his conclusion that there was "simply nothing in the record to support Ohiri's conclusory assertions that he did not want to plead guilty."

Twohig moved to withdraw and the district court granted the motion. Ohiri filed *pro se* objections to the Report and Recommendation and moved to amend his § 2255 motion. In support of his Motion to Amend, Ohiri asserted that the Report and Recommendation was "based on a deficient, inappropriate, incomplete and curtailed petition filed by the attorney of record Mr. Twohig . . . [who] refused to prosecute the petitioner's claims of ineffective assistance of counsel, and failed to support the petition with memorandum of law, [and] points and

-6-

authorities . . . ." Ohiri further asserted that he had filed with the court an amended § 2255 motion and referred the court to the arguments set out in that motion.

In the amended § 2255 motion and accompanying memorandum, Ohiri again asserted that his plea was not made knowingly and voluntarily. He also specifically alleged *Brady* violations for the first time. He argued that the government's failure to provide him with Morris' Acceptance of Responsibility Statement constituted a *Brady* violation and further argued that he would not have pleaded guilty if Morris' "exculpatory statements been disclosed to [him] prior to entry of the pleas." Ohiri also argued in the amended motion that Cline was ineffective by failing to (1) properly investigate the case; (2) obtain material information, including Morris' Acceptance of Responsibility Statement; (3) interview or cross-examine witnesses; and (4) offer any evidence at his sentencing hearing. He contends that part of Cline's ineffectiveness was due to the fact that Ohiri was unable to pay him and Cline's partners were pressuring him not to spend any more time on the case.

The court denied Ohiri's motion to amend, concluding that the ineffective assistance of counsel claim had been raised in the original motion and "addressed on the merits in the Magistrate Judge's Proposed Findings and Recommended Disposition," and that Ohiri had "no valid claim for ineffective assistance of

counsel." The district court did not address Ohiri's allegations of *Brady* violations. In a separate order, the court adopted the Report and Recommendation and dismissed Ohiri's § 2255 motion. Ohiri has served his sentence and is no longer incarcerated, but he is still subject to supervised release, the ramifications of his felony convictions, and significant fines. Thus, his § 2255 motion is not moot. *See Jones v. Cunningham,* 371 U.S. 236, 242-43 (1963); *Oyler v. Allenbrand*, 23 F.3d 292, 293-94 (10th Cir. 1994).

## II.    Discussion

### A.    Standard of Review

"We review a trial court's decision on whether to allow amendment of pleadings for abuse of discretion. A court should freely grant leave to amend when justice so requires." *Gillette v. Tansy*, 17 F.3d 308, 312 (10th Cir. 1994) (citations omitted) (reversing district court's denial of motion to amend § 2254 habeas application to add claim as an abuse of discretion). Rule 15 of the Federal Rules of Civil Procedure governs a motion to amend a § 2255 motion if it is made before the one-year limitation period for filing a § 2255 motion has expired. *See United States v. Espinoza-Saenz*, 235 F.3d 501, 505 (10th Cir. 2000) (holding that "an *untimely* amendment to a § 2255 motion which, by way of additional facts, clarifies or amplifies a claim or theory in the original motion may, in the District Court's discretion, relate back to the date of the original motion if and

only if the original motion was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case" (emphasis added)). The judgment of conviction was entered on December 23, 2002, so Ohiri's motion to amend his § 2255 motion, filed on August 18, 2003, was made within the one-year limitation period.

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. *See generally*, 3 Moore, Federal Practice (2d ed. 1948), ¶15.08, ¶15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

### B. The Amended Motion

Respondent, while conceding that it received a copy of Ohiri's proposed amended § 2255 motion, first suggests that Ohiri may have failed to submit the amended motion to the district court, noting that a copy of the amended motion and accompanying affidavits and attachments is not in the district-court record. [4]

---

[4]Ohiri asserts that he mailed the amended motion and supporting documents to the district court on August 15. He has attached a copy of a certified mail receipt dated August 15, 2003 to his reply brief.

Without seeing the amended motion, Respondent argues, the district court would have known that Ohiri raised general allegations of ineffective assistance of counsel, but would have had no knowledge of Ohiri's specific claims. Thus, it could not have abused its discretion in refusing to grant the motion to amend.

Respondent is correct that copies of the amended motion and the supporting documents are not in the district-court record. When the district court denied the motion to amend, it wholly failed to discuss Ohiri's *Brady* claims and failed to specifically address the expanded ineffective-assistance-of-counsel claims asserted in the amended motion. In Ohiri's motion, however, he explicitly directs the court to the arguments set forth in the amended motion and "supporting" documents. Accordingly, even assuming that Ohiri failed to properly file the amended motion and accompanying documents, the district court should have been aware that the documents were not in the record and that they were essential to its review of Ohiri's motion. If the district court denied the motion without reviewing the amended motion, it would not have exercised its duty to examine the underlying facts and circumstances alleged by Ohiri before determining whether the motion to amend should be granted and thus would not have exercised its discretion at all, which is reversible error. *See Foman*, 371 U.S. at 182. If the district court had not received a copy of the amended motion, it should have notified Ohiri so that it could conduct a proper review of his request.

## C. Brady Claims

Respondent further argues, however, that the district court did not abuse its discretion in refusing to allow Ohiri to amend his *Brady* claims because amendment would have been futile. Respondent asserts that Ohiri's *Brady* claims were properly rejected by the district court [5] and amendment to amplify and support the claims would be futile because Morris' Acceptance of Responsibility Statement was not exculpatory and because the government had no obligation to give Morris' statement to Ohiri before he pleaded guilty.

To establish a *Brady* violation, a defendant must show: "1) that the prosecution suppressed evidence; 2) that the evidence was favorable to the accused; and 3) that the evidence was material." *United States v. McElhiney,* 275 F.3d 928, 932 (10th Cir. 2001) (quotation omitted). Evidence is "material" if there is a "reasonable probability that, had the evidence been disclosed to [the defendant], the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "[A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal . .

---

[5]The magistrate judge determined that *Brady* claims were implicit in the original § 2255 motion even though counsel Twohig did not expressly make a *Brady* argument.

-11-

. ." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). The Report and Recommendation concluded that Morris' Acceptance of Responsibility Statement was not exculpatory because Ohiri's convictions involved the storage of materials after Morris left GWC.

Attached to Ohiri's proposed amended motion is a letter Ohiri alleges he prepared on December 15, asking for the court's mercy and clemency at sentencing. As to Count 21, Ohiri claimed that Morris handled the drilling-company transaction alone, undercharged for the disposal and hid the waste because Morris knew it would cost GWC more than what Morris had charged to dispose of it, and that, when Ohiri discovered it, Ohiri properly disposed of it immediately, at a loss to GWC. Additionally, the district court concluded that the waste Morris picked up from Four Corners Drilling was "precisely [the] waste that the Environmental Protection Agency found to be stored illegally at GWC when it executed a federal search warrant on November 13, 1998, and that is the subject matter of Count 21." *Ohiri*, 242 F. Supp.2d at 1042. As to Count 25, Ohiri maintained that Morris initiated and completed the transactions from iiná bá and TPL and hid the waste, and that this waste had been mistakenly stored offsite during warehouse reconstruction. According to Ohiri, Cline modified the letter to delete all of his statements indicating his actual innocence.

Ohiri agreed to plead guilty to "caus[ing] the storage" of hazardous waste and he pleaded guilty to counts alleging that he "knowingly stored" hazardous waste without authority to do so. We emphasize that Ohiri asserts his innocence on all charges to which he pleaded guilty and argues that he pleaded guilty only because Morris' 1999 statements to the Environmental Protection Agency and the New Mexico Environment Department accused him of involvement in illegal conduct. Ohiri further asserts that he believed Morris would testify against him and that he was warned by Cline that he could likely be convicted based on Morris' testimony. In his Acceptance of Responsibility Statement, however, Morris asserted that Ohiri was not aware of some of the illegal activities he engaged in while employed by GWC. Even though the illegal conduct to which Ohiri pleaded guilty includes conduct that occurred after Morris left GWC, Ohiri asserts that if he had been aware of Morris' Acceptance of Responsibility Statement, he would not have pleaded guilty to "knowingly" storing waste he alleges was obtained by Morris and which remained hidden on GWC's property after Morris left the company.

We conclude that the arguments and documents supporting Ohiri's Motion to Amend not considered by the district court call into question the conclusion reached by the district court that Morris' Acceptance of Responsibility Statement was not exculpatory.

The district court, however, also concluded that Ohiri could not establish a *Brady* violation because "the government is not required to produce all *Brady* material when a defendant pleads guilty." As support for this conclusion, the district court relied on *United States v. Ruiz*, 536 U.S. 622 (2002). The issue before the Supreme Court in *Ruiz* was whether the Constitution requires federal prosecutors, before entering into a binding, "fast track" plea agreement with a criminal defendant *prior to indictment*, to disclose "*impeachment* information relating to any informants or other witnesses." *Ruiz*, 536 U.S. at 625 (emphasis added). The fast-track plea agreement at issue in *Ruiz* required the defendant to expressly waive the right to receive impeachment information, but the government agreed to disclose "any [known] information establishing the factual innocence of the defendant" and acknowledged its "continuing duty to provide such information." *Id.* (quotation omitted).

The Supreme Court noted that "impeachment evidence is special in relation to the *fairness of a trial*," not in respect to whether a *plea is voluntary*, and that the "Constitution does not require the prosecutor to share all useful information with the defendant." *Id.* at 629. It explained that impeachment evidence differs from exculpatory evidence in that it is not "critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant." *Id.* at 630.

The *Ruiz* Court further noted how the defendant's constitutional rights to receive *Brady* materials had been protected: "the proposed plea agreement at issue here specifies, the Government will provide 'any information establishing the factual innocence of the defendant.'" *Id.* at 631.

*Ruiz* is distinguishable in at least two significant respects. First, the evidence withheld by the prosecution in this case is alleged to be exculpatory, and not just impeachment, evidence. Second, Ohiri's plea agreement was executed the day jury selection was to begin, and not before indictment in conjunction with a "fast-track" plea. Thus, the government should have disclosed all known exculpatory information at least by that point in the proceedings. By holding in *Ruiz* that the government committed no due process violation by requiring a defendant to waive her right to impeachment evidence before indictment in order to accept a fast-track plea, the Supreme Court did not imply that the government may avoid the consequence of a *Brady* violation if the defendant accepts an eleventh-hour plea agreement while ignorant of withheld exculpatory evidence in the government's possession. *See McCann v. Mangialardi*, 337 F.3d 782, 787 (7th Cir. 2003) (stating that, given *Ruiz's* distinction between exculpatory and impeachment evidence, "it is highly likely that the Supreme Court would find a violation of the Due Process Clause if prosecutors . . . have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a

defendant before he enters into a guilty plea"); *United States v. Persico*, 164 F.3d 796, 804-05 (2d Cir. 1999) ( "The Government's obligation to disclose *Brady* materials is pertinent to the accused's decision to plead guilty; the defendant is entitled to make that decision with full awareness of favorable [exculpatory and impeachment] evidence known to the Government.").

Under the unusual circumstances presented in this case, we conclude that the district court abused its discretion when it refused to allow amendment of Ohiri's § 2255 motion to allege a *Brady* or due process violation.

D. *Ineffective Assistance Claim*

Although an ineffective assistance of counsel claim was not independently raised in the original § 2255 motion, the magistrate judge read Ohiri's original § 2255 motion to include a claim that Cline provided ineffective assistance by not obtaining Morris' agreement with the government, by not obtaining a copy of Morris' Acceptance of Responsibility Statement, and by coercing him into pleading guilty. The Report and Recommendation concluded that Ohiri could not establish constitutionally ineffective performance because he could not show that Cline's performance caused him to plead guilty and that "nothing in the record [] support[s] Ohiri's conclusory assertions that he did not want to plead guilty." *See Hill v. Lockhart*, 474 U.S. 52, 56-57, 59 (1985). As support for the conclusion that Ohiri wanted to plead guilty, the Report and Recommendation noted that

-16-

Ohiri was informed about Morris' Acceptance of Responsibility Statement at sentencing and, yet, "did not ask [the] Court to allow him to withdraw his plea."

Ohiri objected to, and sought to address, these findings and conclusions by submitting his amended motion (which alleged additional claims of pre-trial ineffective assistance including failures to interview any witnesses, to obtain expert testimony, and to test the government's physical evidence, and claims of pre-sentencing ineffective assistance by failure to offer any mitigating evidence and refusing to use available evidence or Ohiri's testimony to contradict the government's witnesses) together with his and Cline's affidavits. The district court did not specifically comment about the evidentiary submissions or the additional claims; the court simply concluded that Ohiri "has no valid claim for ineffective assistance of counsel."

On appeal, Respondent again argues that Ohiri's proposed amendment to his § 2255 motion to add or amplify ineffective-assistance-of-counsel claims is futile, and that the district court therefore did not abuse its discretion when it denied his motion to amend. Respondent's futility argument relies, in part, on the district court's determination that Morris' Acceptance of Responsibility Statement was not exculpatory; we have already concluded that this determination is questionable and must be re-examined based on arguments Ohiri makes in his amended motion. Further, although the district court concluded that Ohiri's plea

-17-

was made knowingly and voluntarily, that conclusion was reached without a review of the arguments and supporting documents contained in Ohiri's amended § 2255 motion. [6] Because the district court did not consider those arguments, we do not have confidence in its conclusion that Ohiri's plea was made voluntarily. Respondent's other arguments on futility go to the merits of Ohiri's amended claims and are best resolved by the district court in the first instance; particularly in this case, where no evidentiary hearing was held. Based on the allegations and arguments set forth in Ohiri's amended motion, we cannot accept Respondent's argument that amendment would be futile. Accordingly, we see no reason not to apply the general rule set forth in *Gillette* and *Espinoza-Saenz* that one seeking post-conviction relief should be allowed to timely amend his pleadings to add new claims and supporting facts if "there is no evidence of bad faith by petitioner or of prejudice to respondents," *Gillette*, 17 F.3d at 313, and the motion to amend is timely filed, *see Espinoza-Saenz*, 235 F.3d at 505. We conclude that the district court abused its discretion when it refused to allow Ohiri to file an amended § 2255 motion raising specific ineffective assistance of counsel claims.

---

[6]These documents include an affidavit from Cline.

-18-

## III.     Conclusion

We **reverse** the district court's order denying Ohiri's motion to amend his § 2255 motion. [7] The matter is **remanded** to the district court for further proceedings consistent with this order and judgment.

Entered for the Court

Michael R. Murphy
Circuit Judge

---

[7]In light of our conclusion that the district court abused its discretion when it refused Ohiri's request to amend his § 2255 motion, it is unnecessary for us to address the bases on which Ohiri seeks a COA.